3-17-08-73 In marriage of Michael Davis, a talented cross-acolyte by Julie Galassi and Leanne Davis, now known as Leanne Galassi, acolyte, cross-talent, and objecting to divorce. Your license. I'm here before you today to talk about two issues arising out of the trial court's judgment in this case. The first has to do with discouragement support and when my client's obligation was triggered under the parties post-nup agreement. The second issue is the amount of fees that the trial court ordered to be paid by my client pursuant to the post-nup agreement. I draw your attention to the post-nup agreement language. Quote, parties are required to agree on whether financial support shall be provided in the event of divorce. They agree. First, the husband was to pay spousal support until the wife obtained a license or some type of professional certificate over a period not to exceed 30 months. Second, during that period when she was to obtain some type of certification, the husband was obligated to pay $4,000 per month until the wife obtained a job or 36 months had passed, whichever came first. The divorce was filed in October of 2013. During the entire course of the proceedings through 2013 to a client's trial in September of 2018, the wife never worked. The husband, by virtue of the court's ruling, ended up being obligated to support the wife under the post-nup agreement for a period of 53 months. The court below ruled that the husband's obligation to pay that $4,000 a month was not even triggered until he happened to go in in response to a wife's motion to seek temporary maintenance under the statute. It was our position in March of 2015 that she was also disputing the validity of the post-nup agreement. So at the temporary hearing where she wanted maintenance under the statute, our response was no, that's incorrect. The husband was only obligated to pay $4,000 a month under the agreement. The order that was entered simply stated that Michael is to pay $4,000 a month to the end and attorneys get a date for a trial on the issue of the validity of the post-nup agreement. I have a question for you on that point. I think you're looking at paragraph four of the post-nup agreement that talks about maintenance. The broad language above the subparagraph 4.1 and 4.2 discusses that in the event of divorce or legal separation, when was the divorce finalized? Because this was bifurcated, I believe. The divorce wasn't finalized until the trial court issued its ruling after the September of 2018 final hearing. But you're claiming that amounts paid prior to the divorce or the judgment of dissolution should qualify as maintenance. I don't read the language of paragraph four that way. Was there a legal separation? No, there was not. And I think the point I would make to your question or observation is that there would have been no point to put in that 36-month maximum period pay if, in fact, the wife could skirt that 36 months and tie the case up in the trial court for years and years and obtain support. In fact, the trial court was a different trial judge in March of 2015. But again, the judge ordered just the $4,000 a month payment. So it would be my position that the trial court recognized in 2015 that he had an obligation at that time to make the payment required under the agreement. And there wasn't a provision in the agreement that somehow differentiated that, oh, this just deals with permanent maintenance, but then temporary maintenance, it doesn't matter, it's not even addressed. You know, the judge addressed this in the first paragraph of this December 1st ruling, right? Correct. And points out that, you know, when he said it would start beginning the court order on March 9th rather than earlier, he said it's clear the plaintiff is not paying maintenance pursuant to the terms of the P&A, to the trial judge. And the arguments submitted now, I mean, submitted herein by the plaintiff were never tendered in plaintiff's response to the petition for temporary relief in February of 15th, nor did he indicate on the financial affidavit filed in March of 2015 that he was paying any maintenance as he did on the affidavit filed November of 16th. How is that discrepancy explained? I would explain that first in that at the, in February of 2015, when the wife first raised this issue that the postmark was not valid and I want maintenance under the statute, our simple response was that the postmark ruled and he had been supporting her. And we hadn't even gotten to the 36 months, so there was no reason for us to, you know, argue that point. You know, the 36 months was truly running, you know, months and months and months after that March hearing. Now, as related to the question posed by Justice Wright, divorce would mean a divorce, right? A judgment of divorce. I guess you could take that interpretation of the postmark agreement in the event of a divorce, but I guess what would be the whole point, though, in, you know, that he didn't have to support her during those 30 months when she was, you know, attending school? Well, that argument sort of fails because if it was the postnuptial agreement would control and it said divorce, that meant that that wouldn't kick in until the divorce, if it's interpreted that way. Likewise, legal separation, Illinois has two forms of ways for married people to come apart and that's one is a divorce, one is a formal legal separation. That part of the agreement doesn't talk about when they're living apart. It says it's using terms that have statutory meaning, legal separation, divorce, right? Yes, those are statutory terms, but again, I think you have to look at the four corners of the document and, okay, what was the plan for these two people? And they were trying to map out everything that was going to happen from the time that, okay, we're not going to be married anymore. Now, I guess the implication by the trial judge's ruling is he just didn't, he believed that the argument propounded later in November of 16 didn't come up until later because all the early stuff never mentions paying support, never mentions the kind of argument presented to him. That was tied in with the other issue that I have raised in that when we finally got to a trial after litigating approximately two years over this validity of the post-mortem agreement, and we put together a position statement regarding, okay, when did the clock start ticking? There was no objection from the wife that that argument had been raised. She just simply asserted, well, no, we're going to, it should start with that March hearing date. And so it's our position that the trial court inappropriately raised this waiver of defense. If Leanne had raised it, then we would have been able to give our argument as to the issues that you have raised. Well, the way the trial judge talks about it, it doesn't necessarily sound like waiver or forfeiture. It sounds like what the parties understood the agreement to mean, the way it's phrased in the order paragraph one. Well, I guess the point I would make is that that conflicts with our position at trial as to what our understanding was. Well, it certainly does. I agree with you. It certainly does conflict with your position afterwards. If the court had raised that issue at trial, we would have been able to explain when the clock started ticking and pointed out that the husband had been, you know. Well, the wife's position all along was when did it start? Her position was it started at the time of the entry of that March order saying pay before grant, which then ignored again that when the parties split off their accounts prior to December and the husband was depositing $4,000 into an account that she used. So, I guess our contention is that, okay, well, when is that obligation triggered? And it seems to me that we triggered it when he continually supported her during the pendency of the proceedings. And I think that, you know, it wasn't put on the affidavit prior to that hearing simply because the affidavits in and of themselves reflected that he was paying expenses of the wife in excess of $4,000 a month. And, I mean, that was recognized and undisputed that he had been supporting her that whole time. Again, it's our position that this is, you know, a defense that the court raised and it was inappropriate. I mean, worst case scenario, it seems to me that, okay, he's depositing his check into a joint account after the proceedings start. But they're still married. It doesn't matter whether he puts it in that account or not. It's joint funds. It seems to me that by taking that interpretation, then you're kind of throwing out the window what was meant by the terms of the agreement of the parties. And that was that if we are going to, you know, get divorced, he has a limited period of obligations towards her. And, again, it all falls back to divorce and legal separation and those kinds of orders and so forth. I mean, there's ways to draft these agreements. Right, but the agreement does not state or define that divorce or legal separation needs or has to be equated with when the judgment is entered. Just as in the event of a divorce, which I would say is somewhat kind of common language that we use every day, you know, oh, I'm, you know, we're getting a divorce. Well, there's a common understanding of when you're divorced or when there's a legal separation. I mean, that's, you know, when those words are used in a document that's a legal document and then there's legal statutes, that has some... And the only thing I can point to is, although not in this record, but during the litigation over the post-nup, that was prepared by the husband who had no determent. So I guess I don't think you can attribute this to a document that I would prepare where more precision or definition would be included in an agreement of this type. Maybe it was a document prepared pro se. Correct. But it was still a document prepared by a party to the agreement. That is true. I mean, you know... I'm sorry. Go ahead. No, no, I was just going to ask. The wife had no right to do the right thing. No, she was represented prior to the execution of the post-nup agreement. The husband was not. The wife was. In fact, that attorney was called as a witness during the trial over the consideration of whether it was valid or invalid. How long did that representation take after it was executed? When did the representation start for both parties when they started litigating? Are you talking about in... When did they start? After they physically separated and after they... They were always represented. The post-nup was executed in, I believe, 2012, if I'm getting that right. She had an attorney. He did not. Then the case was filed in October of 2013. And then at that point, both parties had attorneys. Ended up not being the same attorneys throughout the entire case. But as I understand it, on March 9th of 2015, he had an attorney. That is correct. And February 4th of 2015, he had an attorney. That is correct. And when the affidavit was filed in March of 2015, he had an attorney. Correct. Was it a... From the March 6, 2015 affidavit that was filed, he had an attorney. And he had an attorney when he filed the November 16th, which was the first time that there was a thing about prior paying maintenance. Were those different attorneys? The one in November 16th and the one in March of 15th? Yes. Those were different attorneys. The last point I want to make is that on the issue of the attorney's fees, under the post-nup, he was obligated to pay her attorney's fees. Both parties stipulated at trial that he had already paid $5,000 and was entitled. In fact, in her position statement, she gave a credit for those fees. The trial court did not award those fees or give that credit. And so it's our position that he is entitled to a $5,000 credit on the fees actually awarded. Hasn't the wife stipulated that? I thought... I don't think so. I mean, there's the issue with the one attorney's fees, Watson's fees, which I would address on rebuttal as to why that ruling was appropriate. I just thought there was a stipulation that credit should be... Not a formal one, but in the brief. Right. It seemed like it. Right. In their position statement at trial, they listed out this firm incurred X amount, this firm incurred another amount, the third firm incurred, and then they totaled them, subtracted $5,000, and said he owes $41,000 after subtracting the $5,000. Okay. Thank you.  Mr. Polansky and Ms. Riva. Good morning, Your Honors. Please report, counsel. Let me... It might be best to jump into the questions that you already posed and the answers given to Justice Wright. I think that's a good point about that introductory language of Section 4. It does read as if in the event of a divorce, and frankly I was not trial counsel and I actually wondered whether that would have had some merit to argue that that was temporary maintenance, even under the temporary maintenance order, and until the divorce actually started, she could have gotten another three years, but we didn't preserve that argument. I'm sure the trial court ruled in favor of soon-to-be ex-husband because maintenance could have been ordered to begin in 17th rather than 15th. Well, I see it as a compromise, and oftentimes the court does that in dissolution proceedings. I think it's important to note that, and I think this goes to most of the questions that have been posed here on this issue of, well, the divorce gets started in October 2013 as if somehow by osmosis a maintenance order somehow comes to life just by the filing of the case. I would note also if you look at Sections 4.11 and 4.15, one has to do with the effect of the parties' wills and the other is our attorneys' case provision. Those both specifically have the verbiage that there's been a filed petition or an initiation of the proceedings, and under regular rules you can read an entire document together. You can't add anything to it, which it seems to me that's what they're trying to do. They're trying to add paying money into an account or paying some bills as another addition to the wording of maintenance, which I think that violates one rule of construction. But you have to look at the whole document itself, and again, if he as the drafter wanted these monies that were going into the account to be considered maintenance, he could have easily said that. And I really don't buy the idea that whether he drafted it himself versus who had a lawyer or who didn't have a lawyer. I believe my client did have somebody look at it, as counsel indicates the person was called in the post-enough enforcement hearing. But I think it's important to note that I really think this whole idea that this somehow the judge sua sponte or somehow came out of left field with something that Mr. Davis didn't have an opportunity to rebut, I think that's just a complete red herring. The case was kind of done oddly, and I'm not sure how. I've never had one of these, but the witnesses, when we got to the final trial, will note that there's no real transcript of the parties testifying to what the agreement meant or what happened or who put the money in or did Mr. Davis overdraw the account or was Leanne needing more money. All those were done by the lawyer sitting with the judge, and there's a transcript of that. But to kind of go back and forth, it's important to note when you look at page R9 of the record, counsel says specifically that the court is going to have to look at the post-up and construe it. Now, certainly I don't think you can look at this post-up agreement and say that it so clearly and unambiguously favors Mr. Davis's position that automatically just by the language of it, four quarters of the document, no need for parole evidence, but that says that by him putting that money in when he did, that that was a maintenance obligation. So my point is once you get beyond that, I think plain fat, you're really looking at this from the standpoint of a factual question or at best a mixed question of law or fact. That's why I put in my brief, I don't think this is a de novo review. I think you're allowed to rely on Judge Cusack's looking at what the parties proffered that their witnesses or their parties would say. And I think it's important that when you look, there's some things that are in the record where even during this whole period of time when they're saying that he should get a credit for this money being put in, for about five or six months he moved back in. The parties lived together for a while. Then there was also a proffer that began with it said that there were many times where the account was overdrafted and when this money, even when the $4,000 was being put in, Mr. Davis was actually accessing it. So he couldn't have been paying maintenance. He was doing what we do a lot in temporary matters, which is you get to maintenance at the end of the case, and a lot of times people don't want to have a temporary maintenance order, so they just share bills or they put money in the account, but that is not a maintenance obligation. Now, counsel says that the agreement doesn't say what we say, and that means you have to have a maintenance order. But my point is until Judge Cusack on petition says he's entering a maintenance order that Leigh Ann has requested, there's no indication anywhere, and as Justice Carter indicates, I think clearly, Judge Cusack noted in the affidavits didn't say he was paying maintenance. His response to the petition for temporary maintenance even then didn't specifically say, hey, well, by the way, I've already paid a year and a half of it as of March of 2015 because it already started back in 2013. Importantly, if his argument is correct, he would have paid his 36 months in October of 2016. Now, do we hear anything from October of 2016 through the proffer trial in November of 2017? Hey, I'm done. Where's his motion to terminate the temporary maintenance for that year? There isn't one. So light bulb moment for me. The argument is that the maintenance ended before the dissolution order. Is that correct? If we were to give him credit for all the contributions. I think that's what he's saying. So that's directly contrary to the language of the Post-Nuptial Agreement, that maintenance is upon dissolution. This, your argument, is that maintenance would end in 16 and the dissolution didn't even occur for a few months after that. That's one of the parts, but I think even beyond that, just the plain fact of not coming from charging in and saying it's not over, I want to terminate it. I think as we all know, kind of to the parties, is one thing that the trial judge or final defense can look at to decide what something means. The best evidence of what something means is how somebody acts about how it means. So my point is, at many places along the way, I also noted here there was no evidence that on any tax returns, this $4,000 was taken off as not included as income. I mean, no one likes paying taxes. If it were me, I certainly would have. If I really thought I was paying maintenance for that period of time, I would have claimed that's a lot of money, $4,000 a month for that whole period, and that's a good chunk of savings if you put that down on your tax return. Didn't do that either. So in my view, the whole argument, I think Justice Carter maybe alluded to it, and I guess some of the advocates, I'll be more blunt, I think that whole argument was cooked up at the end, and they really had that argument. There were numerous places along the way, especially after the temporary maintenance order was already entered, and runs for a while, if they really thought that this ended in October of 2016, they should have complied into the court at that point. You know, with regard to the attorney's fees, the judge relied heavily on paragraph 4.11, right? 4.11. And some of the distinctions that were attempted to be made, the judge's ruling responds to those questions. Does it not? You're talking about my gross appeal amount? Yeah. On the fees. Right. And again, I was not there for this part of it, and I think everything kind of got jazzed up, because I think, unfortunately, Judge Cusack, somewhere along the line, thought that this attorney Watson, who was appeased, that we're trying to claim had somehow taken an appeal, and because she didn't win, that somehow, under the statute, no prevailing party in an appeal unless you win. Well, the problem was there was no appeal at all. So when he had made the point that I don't have any affidavit that distinguishes between the work for the appeal and for the trial court work on the Post-Nup agreement, I think he had it all confused. So our point, really quickly, is on the fees, that we really are in a situation where these are statutory or case law fees. These are contractual fees in this particular case. And I think the contract 4.11, I think, overrides and puts in the judge's lap the decision that he had to award fees because there's no prevailing party language in the contract. And also, I would add that really there's no prevailing party language in case law or under the statute. Judges award fees under the financial comparison analysis every day. It doesn't matter who really wins or loses or who wins how much or who loses how much. So my point there is that they've got the distinction in the paragraph between the, as she said, school is 100% not in school. I think that's really a moot point. I don't think they're really even arguing there. I think the point now is the 100% said. And just so that… You're telling us it's not a dispute choosing school? No, what I'm saying is she… Right, exactly. Right, that she should get the 100%. Yeah. I don't think they ever said that it should be 40%. Wasn't the trial judge's ruling on Watson's fees, though, also conditioned on the fact that he or she didn't have evidence of what was billed and what was paid? When those fees were awarded on a temporary basis, did Watson submit bills at that time? The record is unfortunately pretty silent. And I understand it's not the record that you… So what my position is in its simplest form is that, again, they did this trial by proffer of their briefs and their exhibits and their points made to the court on the transcript. My point is that she said what she had been billed and paid, and the court, if you'll note, specifically did find that both sides spent the same amount of money, roughly, to deal with this post-up. So my point is that the judge had enough, and there's case law, that you don't have to have bills, that the judge can look at what was done, consider what was done, and, again, that both sides had the same amount of fees. It's not like, oh, wait a second, you're asking for $27,000, we tried the case for $12,000. That might be different, but they never came in and said that their fees were substantially lower. So, again, this is kind of an oddity because I think we all agree that this is a manifest way to the evidence or a manifest way to the proffered statements from the lawyers and all the material, which kind of gives us a new twist on things. But I think when you get down to it, we think that because both sides had the fees about the same, she said she paid them, and there's no prevailing party language in the agreement, we think that that part should be reversed, or at a minimum, it should be reversed for another hearing because I think we should be given some chance to put that evidence on, because I think the parties that agreed to do this by proffer, and then our position is Judge Cusack kind of changed the playing field early on because it looked like all he was expecting was just to have some proffer, the amount, both sides said this was the amount, and he was off on it, like I said, and, of course, with a tangent about whether they're going to appeal or not. That was just two minutes. So that's really as much support as any other question. That's all I have to say. Although I would note that for whatever good that may do, the parties do have another case that was up here, so I think some of you may have been on the Davis v. Davis case. I think some of the same arguments were made about enforcing the fee agreements in that case. So I would, unless anybody has any other questions, I would take my leave. I don't think so. Thank you, Mr. Rubin. Ms. Gillespie. Any other questions? At trial, Leanne wanted Michael to pay almost $30,000 for Watson's fees. We filed a memorandum as to why those fees could not be awarded under the postmark, and the trial court adopted our argument. The first was that if you are going to sue under a contract, you'd better win to get the fees. We cited cases for that. Second, you can't award attorneys' fees if the payment of those fees was never contemplated by the agreement. No party, including Michael, would have signed a postmark agreeing to pay 100% of your fees, contemplating that Leanne would, instead of entering into a quick judgment under the agreement, engage in two years of litigation to set aside the postmark. So those were the two reasons that the trial court adopted. Second, the court noted that the reasonableness of Watson's fees had been in dispute for as long as he had been in the case. He articulated quite well that those fees were in dispute. Watson had been subpoenaed. She filed a motion of quash. Nobody put on any evidence as to what were her fees spent on, which was clear he was not going to award fees for trying to set aside the postmark agreement. So nothing was ever put in. And we had objected all along to the payment of her attorney's fees. We had objected when Judge Keith, at that time, entered the order for the $5,000. And he went on the record to say that, you know, I'll give you $5,000 up front, but if this agreement is held to be valid, then, you know, it's going to come out. Well, you know, I'm confused about that argument because the agreement in 411 says, in the event either party files a petition for legal separation or divorce, doesn't say an agreed, you know, matter, the husband shall be responsible for his own legal expenses and 40% of the wife's legal expenses unless, and then they strike out, she is unemployed. And so it says, unless she still is in school, wherein the husband shall pay 100% of such expenses. And it says legal expenses don't include lost wages as a result of any proceedings. So that doesn't sound like it's just anticipating approval. Well, then you need to go to, like, the first page of the agreement where it talks about, there's some language talking about the consent judgment, and there have been accordance with the agreement. And I can't quote the exact language. It certainly appears to me in the post-nut that everything was laid out how all these issues were to be retained. And that agreement never contemplated being in court for a couple of years to, and in discovery to try and set aside the post-nut. Well, and that goes to contractual interpretation as the specific controls over a general language. Correct. But, I mean, I think that you can take into account what is the whole point of having a post-nut, but to avoid years and years of litigation. And that's clear from the agreement that the parties were attempting to lay out here so we can handle schooling, the car, et cetera. Are you saying that provision was ambiguous?  Were you saying that provision was ambiguous? Am I saying it was ambiguous? No, I'm not. But in any event, you know, regardless of whether anyone wants to accept the trial court's adoption of our argument as to whether those fees to evaluate the contract are not recoverable under the contract, the second point is that it was clear going into the final hearing that Watson's fees were going to be disputed. She was going to have to prove up her fees. And Leanne chose not to call her and not to present any evidence. And certainly we were entitled, you know, yes, in some circumstances a court can, okay, what do you have in this? What do you have in this? But when a party indicates that fees are unreasonable and they are disputed and they present no evidence, I don't think the court can or you should now say, well, there was no hearing, no proof, but she did it anyway because, you know, Velassi, you know, or Michael had... Well, there is proof of a charge and a payment, some payment and a charge. She was charged with those fees, right? I don't know. I never saw the bills. Well, there's an indication she was charged. That's what they said. And then that's a question, I mean, that's evidence. They say it's charged. And then if there's a dispute about that, then either party can call a witness. You could call a witness. I mean, when I say you, I mean you could call a witness. So if there's a failure of proof, one party has to prove something that they say they were charged this. That's proof. And then if there's a conflict about the amount or parts of the amount, it's about what evidence is presented to the court. There is some evidence presented to the court. That is true, but the court indicated that it was not going to award those fees without proof from Watson herself that they were reasonable. And this goes just to this attorney. And is that word, is it used in 411? The word reasonable? I think that it would be implied if Mr. Reba wanted to charge $3 million for his appearance today, does that mean Leanne could say, well, you're liable for 100% of my fees. Pay up, buddy. I mean, to me, that's implied. He doesn't want to pay for Mr. Reba's retirement. And I have a follow-up question to Justice Carter's question. Go ahead, Justice. No, no, no. You're in the middle because you get to go first. What happened to the motion to charge? Um, she, it was, Mr. Reba was not in the case yet. And Ms. Gerardo had subpoenaed Watson to come and appear with her bills so that there could be, you know, testimony put on where her time was, what was she charging. At the motion, nothing happened other than, if I remember correctly, that Watson said she couldn't appear, she had to be someplace else. And so it was kind of left that, well, you're going to put forward your bills, then you better be here to prove them wrong. My question. Counsel has suggested a remand for hearing on Watson's fees. What is your position on that? My position is that, one, they're not in Watson's fees. I understand that. Okay. That they weighed that. They had the burden to prove up that they were entitled to those fees and that they were reasonable. And they chose not to after the motion had passed. I have one more question with regard to the language of the post-nuptial agreement. As I pointed out to you earlier on paragraph 4, it's conditioned on in the event of divorce or legal separation. When I turn to 411, the language is a little different. It says in the event that either party files a petition for legal separation or divorce. Why wouldn't that language trigger the attorney fees? I'm not sure. Are you saying? The first, the duty to pay maintenance is conditioned on a divorce or a legal separation. But the paying of attorney's fees is conditioned on, by my reading of 411, the filing of a petition for legal separation or divorce. Do you want to speak to my concern about the difference in language? I think that, at least my interpretation is that if you look at the agreement, they assume that each party, when a divorce kicks in, that they would have attorneys in order to finalize a judgment to conform to the agreement. So clearly they knew, you know, at the very beginning that there was going to have to be attorney's fees paid. Whereas in the difference with the maintenance, again I go back to my argument, that this agreement was to set a limit on what the husband had to pay. And that by saying it only kicks in after divorce, then effectively, you know, all his efforts to limit his liability was taken away by an enhanced two-year litigation and discovery into everything. I think I understand your answer. If I could summarize it, it's the filing of a petition for dissolution or legal separation. Those fees that are triggered by the filing have to be related to the petition for dissolution or legal separation. Correct. All right. Thank you. Thank you. Mr. Rubio, you've got five minutes. Really quickly, the argument just last night among many others seems again to be taking someone who drafted an agreement and now they want to add various qualifiers and provisos. Now he wants you to read 411 as requiring an evidentiary hearing on fees, reasonable fees. They want additional language put in to draw some distinction between when the case was filed. I just don't see any of these things in the agreement. I agree that part of the problem here, I guess, you'll have to decide who bears the risk along the way of them having done this proper rather than letting the people get up on a witness stand. But I do agree that there is evidence in the record that Lee Ann incurred these fees and paid these fees. And as Justice Carter points out, it could have demanded some type of cross-examination or deposition or something to try to flush this out as to whether these fees were really paid or get the bills. I don't see anything in the record that shows Mr. Davis doing a request to produce to have these documents. I mean, Lee Ann would have had the bills if she paid them from Watson. They never asked for those things either. So I return back to the fact that both sides had about the same amount of money. She said that she paid them. There was no evidence that she didn't pay them. And at the end of the day, isn't there always a reasonable calculation? I think there is some overriding reasonableness. I'm not going to stand here and say $31, as counsel says. You can't just come out of left field with something. But I think what I would say is to the extent that there is a reasonableness requirement implied in 4.11, it's met by everybody conceding that the fees on both sides were equal for the same amount of work. And, in fact, I've done these cases before. I can assure you there's a lot more work trying to overturn a pre-nup or post-nup than there is to defend one just by the nature of the way those cases are. So when you have a contest on a prenuptial agreement or a prenuptial agreement, either one. Pre-nup or post-nup, right. Okay. Is that part of the litigation in a divorce or legal separation proceeding or not? I would say it is in this particular case especially because it was actually brought in the dissolution and was heard by the dissolution court judge. Now, I have seen people do these, try to go outside the divorce court to do a declaratory judgment case in your miscellaneous remedies court. I have seen people try to do that and some with success and some people just don't raise the issue. They don't care. But I would say in this particular case under 4.11, this was part and parcel of the divorce case. And again, all they would have to have said in 4.11 is, but I still owe a penny of fees if you attack this. Something like where you attack a will in a will contest and you lose your right. There is a language in the clause that says if you attack this will and you lose, now you are not going to get anything even if you were getting X dollars before him. Kind of the same thing here. He could have put in this an exception that if you attack it and lose, then I don't have to pay those fees. It didn't do it. So, I don't have anything else. Thank you very much for your attention. If you have any other questions, I would be happy to answer them. Yes, ma'am. Thank you, Your Honor. Thank you, Mr. Biddle. And thank you both for your argument today. We will take this matter under advisement and get back to you with a written disposition within a short day.